UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JESSIE VORNELL LEWIS,

               Plaintiff,

v.

SARAH SCHRODER et al.,

               Defendants.

_____/

Case No. 2:25-cv-269

Hon. Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint without prejudice for failure to state a claim.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following MBP employees: Warden Sarah Schroder, Correctional Officer Unknown Koski, Correctional Officer Unknown Tucker, Sergeant Unknown Van Acker, and Correctional Officer Unknown Party named as "John Doe" in the complaint.

Plaintiff alleges that on July 2, 2025, Plaintiff was involved in a physical altercation with another inmate in the yard. (Compl., ECF No. 1, PageID.3.) Plaintiff states that "[d]uring this confrontation, [Plaintiff] was shot in the head, above the neck, with a taser" by Defendant Unknown Party. [1] (*Id.*) Plaintiff asserts that tasing an inmate in the head is "not allowable protocol as [the] head is not to be exposed to high velocity projectiles, nor high amounts of electricity." (*Id.*) Plaintiff claims that "[s]ince being tased in the head, [his] vision is blurred, [he has] migraine headaches, and [he is] anxious and fearful of all [correctional officers] that come around [him]." (*Id.*) Plaintiff further asserts that he has "been told by [his] mental health provider that [he] suffers from manic depression and post-traumatic stress." (*Id.*) Plaintiff asserts that he "didn't have these problems prior to being shot in the head with a taser. . . ." (*Id.*)

After the altercation, Plaintiff states that he was taken to segregation. (*Id.*) Plaintiff claims that he was then "issued a major misconduct for the confrontation [in the] yard by [Defendant] Van Acker." (*Id.*) On July 8, 2025, Plaintiff asserts that he "was not allowed to attend [his] misconduct hearing, as [Defendant] Koski refused to take [Plaintiff] to the hearing." (*Id.*) Plaintiff wrote a kite to Defendant Schroder "notifying her . . . of being denied [Plaintiff's] due process right to attend [his] hearing," but Plaintiff states that he never heard back from Defendant Schroder or her office. (*Id.*) Plaintiff states that "[Defendant] Tucker wrote the ticket, [Defendant] Van

---

[1] In this opinion, the Court corrects the spelling and punctuation in quotations from Plaintiff's complaint.

Acker reviewed the ticket, [Defendant] Koski denied [Plaintiff] due process by not allowing [Plaintiff] to go to [his] misconduct hearing, and [Defendant] Schroder did nothing to correct these actions." (*Id*.)

Based on the foregoing allegations, Plaintiff asserts that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment and violated his right to due process under the Fourteenth Amendment. (*Id*.) As relief, Plaintiff seeks compensatory damages. (*Id*., PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment Excessive Force Claims

Plaintiff alleges that Defendant Unknown Party violated his Eighth Amendment rights when Defendant Unknown Party tased him during an altercation between Plaintiff and another inmate. (Compl., ECF No. 1, PageID.3.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Id*. at 345–46. As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, 'the maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v.*

4

*McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (alteration omitted) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

A claim of excessive force under the Eighth Amendment has an objective component and a subjective component. *Hudson*, 503 U.S. at 8–9. First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline[,] or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's claim regarding Defendant Unknown Party's use of the taser must be analyzed under the Supreme Court's authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison officials as they attempt to maintain order and discipline within

dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321–22. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990).

In this action, Plaintiff alleges that he was involved in an altercation with another inmate, during which Defendant Unknown Party deployed his taser, which resulted in Plaintiff being hit in the head with the shot of the taser. (Compl., ECF No. 1, PageID.3.) Plaintiff asserts that tasing an inmate in the head is "not allowable protocol as [the] head is not to be exposed to high velocity projectiles, nor high amounts of electricity." (*Id.*) Plaintiff claims "[s]ince being tased in the head, [his] vision is blurred, [he has] migraine headaches, and [he is] anxious and fearful of all [correctional officers] that come around [him]." (*Id.*) And Plaintiff has "been told by [his] mental health provider that [he] suffers from manic depression and post-traumatic stress." (*Id.*) Plaintiff asserts that he "didn't have these problems prior to being shot in the head with a taser. . . ." (*Id.*)

As explained below, based on the facts alleged by Plaintiff, there is nothing in the complaint to suggest that Defendant Unknown Party's use of the taser to break up the fight between Plaintiff and the other inmate was unwarranted. (*See generally id.*) Instead, Plaintiff alleges only that Defendant Unknown Party tasing him in the head was "not allowable protocol," and that Plaintiff was injured as a result of being tased in the head. (*See id.*)

To the extent that Plaintiff claims that being tased in the head violated prison protocol or policy, he fails to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar v.*

6

*Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and § 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (holding that a parole board's failure to follow state procedural standards could constitute a violation of state law but not federal law).

Moreover, as to whether the use of the taser here was excessive as prohibited by the Eighth Amendment, prison officials, such as Defendant Unknown Party, have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)); *see also Hudson*, 503 U.S. at 7. A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g.*, *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir.1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (cleaned up)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's

7

"interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (cleaned up)).

Here, viewing the factual allegations in the complaint in the light most favorable to Plaintiff, the factual allegations show that he was involved in a physical altercation with another inmate when he was tased by Defendant Unknown Party. (*See* Compl., ECF No. 1, PageID.3.) Plaintiff has alleged no facts to suggest that Defendant Unknown Party used the taser maliciously or sadistically to cause harm. *See Hudson*, 503 U.S. at 7. Plaintiff does not allege that Defendant Unknown Party purposefully aimed the taser at Plaintiff's head. Instead, the facts alleged by Plaintiff suggest that Defendant Unknown Party used the taser in a good-faith effort to restore order and stop an active physical fight between Plaintiff and another inmate. *See id.*; *Roberson*, 770 F.3d at 406. Applying the standard articulated in *Hudson*, the facts alleged by Plaintiff show that some level of force was necessary to restore order and stop an ongoing fight. 503 U.S. at 7.

As to Plaintiff's allegations that he suffered injuries including blurred vision, migraines, anxiety, manic depression, and post-traumatic stress from being tased, injuries alone are not dispositive as to whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. It is certainly unfortunate that Plaintiff has suffered these injuries as a result of being tased during an altercation between Plaintiff and another inmate; however, deploying a taser during an active altercation between inmates, with no other facts alleged to suggest that the taser was used maliciously or sadistically to cause harm, does not support an inference that Defendant Unknown Party's use of the taser constituted excessive force. *See Gresham*, 2014 WL 4231295, at *9–10 (finding that where a Plaintiff who was shot in the face with a taser during a physical altercation alleges excessive force, the proper inquiry focuses on how force was applied—whether maliciously or in a good-faith effort to restore order—not the extent of the Plaintiff's injuries). As

discussed above, the facts alleged by Plaintiff suggest that Defendant Unknown Party tased Plaintiff in a good-faith effort to restore order during a physical fight, which does not amount to excessive force.

For these reasons, Plaintiff fails to state an Eighth Amendment claim of excessive force against Defendant Unknown Party, and this claim will be dismissed.

### B.      Fourteenth Amendment Due Process Claims

### 1.      Defendants Tucker, Van Acker, and Koski

Plaintiff alleges that Defendants Tucker, Van Acker, and Koski violated his Fourteenth Amendment due process rights as related to the issuance of a misconduct ticket to Plaintiff and the hearing held for the misconduct ticket. (*See* Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 483–84 (1995). A prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence," *id*. at 487, or when a sanction imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484; *see also Jones v. Baker*, 155 F.3d 810,

9

812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. 515 U.S. at 486; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). The constitutional purpose of due process "is to protect a substantive interest to which the individual has a legitimate claim of interest." *Id*.

Here, Plaintiff states that he was taken to segregation after the physical altercation in the yard and then received a "major misconduct" ticket. (Compl., ECF No. 1, PageID.3.) Plaintiff states that "[Defendant] Tucker wrote the ticket, [Defendant] Van Acker reviewed the ticket, [and Defendant] Koski denied [Plaintiff] due process by not allowing [Plaintiff] to go to [his] misconduct hearing." (*Id*.) Plaintiff does not state whether he was found guilty of the major misconduct, nor state what sanction he received if he was found guilty. (*See generally id*.)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484–87. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of

10

disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 486 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[2]

Plaintiff's complaint alleges that he was placed in segregation following the physical altercation. (Compl., ECF No. 1, PageID.3.) The duration of Plaintiff's placement in segregation is unclear; however, Plaintiff alleges no facts to suggest that he was held in segregation for an extended period of time. Under these circumstances, Plaintiff fails to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation. (*See id.*); *see also Sandin*, 515 U.S. at 486–87. Therefore, for these reasons, Plaintiff fails to state a due process claim under the Fourteenth Amendment regarding his receipt of the misconduct ticket and the hearing held for the misconduct ticket.

### 2.    Defendant Schroder

Plaintiff's complaint also asserts that Defendant Schroder never responded to Plaintiff's kite regarding his misconduct hearing, and that "[Defendant] Schroder did nothing to correct" the

---

[2] If Plaintiff was found not guilty of any of the misconduct charges, then he would not have received any sanctions for a misconduct conviction. Under these circumstances, Plaintiff would necessarily fail to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87.

11

actions of Defendants Tucker and Van Acker regarding their issuance and review of Plaintiff's misconduct ticket, and Defendant Koski's alleged refusal to take Plaintiff to his misconduct hearing. (Compl., ECF No. 1, PageID.3.)

The United States Court of Appeals for the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. *Id*. Failing to intervene on a prisoner's behalf or merely denying an administrative grievance to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior *Id.* Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance or failed to respond to a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (holding that failing to properly respond to a grievance is not a constitutional violation); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Smith v. Dawdy*, No. 23-2043, 2024 WL 4925843, at *5 (6th Cir. Sept. 13, 2024) ("[T]here is no constitutional right to unfettered access to grievance procedures, or to a response to every grievance.") Thus, because Plaintiff's factual allegations indicate that Defendant Schroder's only involvement in the allegedly unconstitutional conduct was the failure to respond to his kite, Defendant Schroder cannot be liable where she failed to act or respond to a kite. *See Sheehee*, 199 F.3d at 300; *cf. Smith*, 2024 WL 4925843, at *5

Moreover, to the extent that Plaintiff seeks to hold Defendant Schroder liable due to her supervisory position as warden, government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> A supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. We have interpreted this standard to mean that at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citations and internal quotation marks omitted) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant Schroder, in her supervisory position, encouraged or condoned any conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. *See Peatross*, 818 F.3d at 242.

Accordingly, Plaintiff fails to state any claim against Defendant Schroder, and Plaintiff's claims against Defendant Schroder will be dismissed.

### **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C.

13

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: July 30, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

14